1766

John G. HARVEY, Candace O. Harvey, Cora Lee Stanley, Francis H. Douglas, and Mary C. Douglas, Respondents v. MARSH HAWK PLANTATION, a South Carolina Limited partnership, and Max F. Jones, the general partner of said limited partnership, Appellants.

(414 S.E. (2d) 588)

Court of Appeals

*Desa A. Ballard*, of *Ness, Motley, Loadholt, Richardson & Poole*, Barnwell, *for appellants.*

*Thomas C. Davis*, of *Harvey & Battery*, Beaufort, *for respondents.*

Heard Dec. 10, 1991; Decided Feb. 10, 1992.

Reh. Den. March 9, 1992.

SHAW, Judge:

This action was instituted by respondents, homeowners, to construe and enforce restrictive covenants on property located in Beaufort County, designated as Marsh Hawk Plantation. The case was heard before the master-in-equity with finality who held the covenants were enforceable against all of the property within Marsh Hawk Plantation. Marsh Hawk appeals. We affirm.

Marsh Hawk Plantation was originally developed by Lowcountry Environments, which recorded the restrictive covenants at issue on October 18, 1979. A document entitled "Master Plan," showing a large tract of land denoted as Marsh Hawk Plantation and divided into residential lots, was filed in the Beaufort County R.M.C. office on April 21, 1980. Also recorded on that date was a subdivision plat for Phase I of Marsh Hawk Plantation. Subsequently, the respondent

homeowners purchased lots within Marsh Hawk Plantation. Thereafter, by deed dated September 25, 1987, Lowcountry Environments sold Marsh Hawk Plantation to the appellants. This deed contained a recitation that only the building lots within Phase I of Marsh Hawk Plantation were subject to the restrictive covenants. One of the covenants placed certain restrictions on the removal of trees. Upon learning of the language contained in the deed and Marsh Hawk's intent to clear cut some trees, the homeowners brought this action.

The document entitled "Declaration of Restrictive Covenants" contained the following language pertinent to this case:

> WHEREAS, Lowcountry Environments, a Limited Partnership, is the owner in fee simple of a certain tract of land containing approximately four hundred thirty (430) acres, and more particularly described as follows, . . .
>
> WHEREAS, the said [Lowcountry] has subdivided said tracts into residential building lots and has named said subdivision "Marsh Hawk Plantation" and is desirous of placing upon said tracts, certain protective covenants which are hereinafter more fully set forth:
>
> NOW, THEREFORE, in consideration of the premises, [Lowcountry] does hereby publish and set forth the following protective covenants on those certain tracts hereinabove described:
>
> 1. All residential building lots as shown on all plats of record and in the Beaufort County Clerk of Courts Office of property of . . . [Lowcountry] known as Marsh Hawk Plantation as stated above, shall be conveyed subject to these protective covenants which shall be applied to the acreage and pond lots of Marsh Hawk Plantation. The protective covenants for the condominiums are to be established and recorded at a later date.
>
> . . . .
>
> 15. No healthy or diseased trees above (5") inches in diameter at a height of three (3') feet above the ground will be cut or damaged at any time on any lot nor shall there be major pruning or trimming or other action taken to alter the natural appearance of said trees without written approval of the General Partners of

[Lowcountry]. This restriction does not apply to that portion of any lot on which an approved structure is to be placed. All construction sites must have prior written approval of the General Partners of [Lowcountry].

At a hearing before the master, Marsh Hawk argued the restrictive covenants only applied to the property in Phase I and, regardless of whether they applied to the rest of the property in Marsh Hawk Plantation, paragraph 15 of the restrictive covenants allowed Marsh Hawk to release the covenant against cutting trees. The master ruled against Marsh Hawk on both issues.

The first issue before us on appeal is whether the master erred in finding the restrictive covenants applied to areas outside Phase I. Marsh Hawk contends that paragraph 1 of the covenants refers to "all residential building lots shown on all plats of record." It asserts the only plat of record that identifies residential building lots is the plat of Phase I and because the "Master Plan" was filed two years later, is not a plat and did not reference the restrictive covenants, the restrictive covenants do not apply to all 430 acres within the development, but only to residential building lots on Phase I. We disagree.

The Declaration of Restrictive Covenants, at the beginning, describes the property subject to the covenants as 430 acres, then goes on to give a legal description of the property comprised of two tracts. The declaration then states that Lowcountry has subdivided "said tracts" into residential building lots, named the subdivision "Marsh Hawk Plantation," and placed upon "said tracts" protective covenants. Finally, the declaration states that Lowcountry "does hereby publish and set forth the following protective covenants *on those certain tracts hereinabove described.*" (Emphasis added.) The Master Plan shows most of the 430 acre tract divided into residential lots.

Marsh Hawk argues, for the first time on appeal, that the Master Plan is not a plat. The master specifically referred to it as a plat. There is no indication this issue was raised before or ruled upon by the master. In fact, in arguments before the master, Marsh Hawk likewise referred to the Master Plan as a plat. Further, Marsh Hawk failed to make a Rule 59(e),

SCRCP motion asserting a failure by the master to consider such an issue. *Kneece v. Kneece*, 296 S.C. 28, 370 S.E. (2d) 288 (Ct. App. 1988).

We further note Marsh Hawk makes the bald assertion that the Master Plan was not filed until two years after the restrictive covenants were filed.[1] The homeowners maintain the Master Plan was filed six months after the covenants were recorded. The master's findings and the statement of the case both support the homeowners' contention. There is no evidence in the record to support Marsh Hawk's assertion. *See Windham v. Honeycutt*, 290 S.C. 60, 348 S.E. (2d) 185 (Ct. App. 1986) (the burden is on the appellant to furnish an adequate record for review). Finally, there is no merit to the argument that the Master Plan did not reference the restrictive covenants. The covenants referred to the plats of record. The Master Plan was found to be a plat.

As to the second issue raised before us, Marsh Hawk contends the master erred in invalidating paragraph 15 of the restrictive covenants. Marsh Hawk misapprehends the master's ruling on this issue. The master did not invalidate paragraph 15 of the restrictive covenants. He merely found Marsh Hawk's *interpretation* of that provision was "unthinkable and unconscionable." Marsh Hawk argues the homeowners "did not request this relief in their pleadings" and, therefore, the master's ruling was purely gratuitous and it was error for the master to grant relief not requested. This is clearly not the case.

Marsh Hawk raised the issue of paragraph 15 arguing that, even if the restrictive covenants did apply to all of the property in Marsh Hawk Plantation, paragraph 15 gave Marsh Hawk the discretion to cut trees. The master did not find any provision in paragraph 15 was a nullity, nor did he order any affirmative action such as the provision be stricken. He simply found Marsh Hawk's argument based on paragraph 15 to be untenable. In other words, he didn't buy this argument. Neither do we. We agree with the master's finding that the paragraph 15 covenant contemplates an occasional waiver of an established rule such as when it is necessary to

---

[1] We make no finding as to whether filing the Master Plan two years after the covenants would even have any effect on the case at hand.

take out a leaning tree. It does not permit clear cutting or commercial timber harvesting within the development. To interpret paragraph 15 as espoused by Marsh Hawk would be akin to allowing the fox to guard the henhouse.

For the foregoing reasons, the order below is affirmed.

Affirmed.

BELL, J., and LITTLEJOHN, Acting Judge, concur.